VERMONT SUPERIOR COURT
Windsor Unit
12 The Green
Woodstock VT  05091
802-457-2121
www.vermontjudiciary.org

CIVIL DIVISION
Case No. 22-CV-01230



Richard Coburn

v.

William Deckelbaum and David Creech

<u>Findings of Fact and Conclusions of Law</u>

Plaintiff Richard Coburn obtained a judgment against defendant William Deckelbaum and David Creech. Plaintiff then recorded the judgment as a junior lien on defendants' homestead and filed this foreclosure complaint. At issue is (1) whether defendants' equity in their homestead exceeds the amount of the homestead exemption, and (2) whether, in an action for foreclosure of a junior lien, the court may adjudicate either the enforceability of a senior mortgage or the amount secured by a senior mortgage when the senior mortgagee has not been joined as a party to the action.

A merits hearing was held on September 25th and September 26th, 2024. Plaintiff was present at the hearing and represented by Attorney Frank Urso. Defendants were present at the hearing and represented by Attorney Gary Franklin. The following findings of fact were established by a preponderance of the credible evidence presented at that hearing.

<h2 style="text-align:center">I. Factual Findings</h2>

Defendants reside in a home on the shore of Silver Lake in the Town of Barnard and have resided there for many years. The home was built in 1987 and is a three-story building with three bedrooms, three bathrooms, and 2,964 square feet of living area above grade. The home is on a grandfathered nonconforming lot of 0.84 acres with a well and a private septic system, and the home has a view of the lake. The home is in average condition, and has been appropriately maintained.

At trial, three different opinions were offered as to the value of the home. First, Linda Vaughan appraised the home in June 2024. Ms. Vaughan is a licensed and certified real-estate appraiser and has been employed in the field for more than twenty years. She primarily works for lending institutions in connection with real-estate transactions and was hired for this appraisal by defendants. She visited the home and made a visual inspection of both the interior and exterior, and also considered comparable sales in the nearby area. Her opinion, based upon the comparable sales and her personal inspection, was that the home was worth $1,053,000 at the time of her appraisal. She explained that her opinion was dated several months prior to the merits hearing, but that the market had not meaningfully changed between the time of her appraisal and the date of the merits hearing. The court found her testimony to be both credible and persuasive.

Second, the town recently assessed defendants' property. The assessment card was introduced into evidence, but the town assessor did not testify about the methods used by the town during this townwide reappraisal. Cf. *Vanderminden v. Town of Wells*, 2013 VT 49, ¶ 15, 194 Vt. 96 (explaining that "many different methods exist for determining fair market value" in the context of town assessments) (quoting *City of Barre v. Town of Orange*, 138 Vt. 484, 486 (1980)). Nor was credible evidence offered about what evidence the assessor considered with respect to this property, nor about the town's common level of appraisal. The town assessed the property at $1,146,500, but, for the reasons stated, the court does not find this opinion to be as persuasive as the opinion of Ms. Vaughan.

Finally, Lisa Baldwin prepared a broker price opinion at plaintiff's request in 2022. Her opinion was based solely upon the comparable-sales approach, and did not include any adjustments based upon a personal inspection of either the interior or exterior of the property. Ms. Baldwin acknowledged that her opinion was several years old, and she offered some information about the increase in property values since then. Her opinion in 2022 was that the home was worth between $895,000 and $1,200,000. She thought the home might be worth as much as $1,368,000 in 2024. The court found her testimony to be credible, but not as persuasive as Ms. Vaughan's opinion. Ms. Baldwin's opinion was a broker price opinion rather than an appraisal, and was dated, and was based solely upon the comparable-sales approach, and did not include consideration of the actual condition of the property.

For these reasons, the court finds the value of the home to be $1,053,000 as of the date of trial.

At trial, the parties agreed that there are three recorded mortgages that are senior to plaintiff's judgment lien. The two senior-most mortgages are held by lending institutions, and the parties agreed at trial about the enforceability of the mortgages and the amount secured by the mortgages. The credible evidence at trial established that the balance due on the first mortgage was about $516,000, and that the balance due on the second mortgage was about $382,000.

The third senior mortgage is held by Ellen Greenspan, who is a relative of one of the defendants. The parties disagreed at trial about the enforceability of the mortgage and about the amount secured by the mortgage. The credible evidence established that defendants borrowed $83,333 from Ms. Greenspan in 2007, and that defendants promised to repay that amount "on demand" plus 10% per annum interest. Defendants' promise of repayment was secured by a mortgage given to Ms. Greenspan on the residence, and the mortgage was recorded in the land records. At trial, the credible evidence established that Ms. Greenspan has never demanded repayment, and that defendants have never made any payments on the note.

## II. Amount of Defendants' Equity in Their Homestead

The legal context for this action involves the intersections between foreclosures of judgment liens and the "homestead exemption." Historically, a common method of collection was for judgment creditors to record their judgments as liens against the debtor's homestead, and then to seek foreclosure. During the nineteenth century, this method of collection frequently resulted in the loss of family farms and homesteads. In response, the Legislature created in 1849 a "homestead exemption," which was meant to protect families by exempting their homesteads from attachment and execution, at least up to a certain extent. See *McElroy v. Bixby*, 36 Vt. 254, 257 (1863) (explaining the purposes and policies of the homestead exemption).

At first, the "homestead exemption" typically operated by protecting certain parts of the homestead (e.g., the dwelling house and the barn) while allowing creditors to attach and foreclose upon surrounding lands that were not fairly considered to be part of the "homestead" itself. See, e.g., *West River Bank v. Gale*, 42 Vt. 27, 32 (1869) (holding that a blacksmith's shop on the other side of the road from the dwelling house and the barn was not part of the "homestead" protected by the exemption). Over time, the operation of the exemption has evolved to accommodate modern financing structures, as well as the decreasing number of family farms and the increasing number of single-family homes. The "homestead exemption" now protects a certain amount of a homeowner's equity in their residence, and operates differently depending upon whether the foreclosure is of a judgment lien or rather a purchase-money mortgage. In actions to foreclose upon judgment liens, the rule is that a judgment creditor cannot foreclose upon the debtor's homestead if the debtor's equity in the homestead is less than the amount protected by the "homestead exemption." *Mercier v. Partlow*, 149 Vt. 523, 525 (1988).

Currently, the amount protected by the "homestead exemption" is $125,000. 27 V.S.A. § 101. In order to obtain foreclosure in this case, therefore, plaintiff bears the burden of proving that defendants have equity in their homestead in an amount exceeding $125,000.

The foregoing findings established that the fair-market value of the homestead is $1,053,000 and that defendants owe about $898,000 on the two uncontroversial senior-most mortgages. The difference between the fair-market value of the home and the amounts due on these two mortgages is about $155,000. If the "Greenspan mortgage" is not included in the court's calculation of equity, therefore, defendants' equity in the homestead exceeds the amount protected by the "homestead exemption," and the "homestead exemption" would not prevent a foreclosure in this case.[1]

If the amount secured by the "Greenspan mortgage" is included in the court's calculations, however, defendants' equity in the homestead is reduced to an amount less than the amount protected by the "homestead exemption." In other words, if the "Greenspan mortgage" is assumed to be valid, and the principal amount is included in the court's calculation, then the "homestead exemption" prevents a foreclosure in this case. *Mercier*, 149 Vt. at 525. This is true regardless of whether the court includes only the principal amount of the "Greenspan mortgage" or also calculates the interest due: the principal amount of $83,333 would be enough to reduce the amount of defendants' equity far below the protected threshold.

---

[1] Defendants have argued that a court has equitable discretion to deny foreclosure even in cases where the debtor has more equity in the property than the amount protected by the homestead exemption. At its most extreme, the argument covers the situation where a defendant's equity in the property is found to be $125,001 and asks whether a court would order foreclosure in order to permit the judgment creditor to recover $1 from the sale of the homestead. As applied to this case, defendants have asked the court to make an equitable determination about whether to order foreclosure in order to permit plaintiff to recover $30,000 from the sale of the homestead. Because a resolution of this issue is not necessary to the court's holding, the court expresses no opinion on this issue.

III. Adjudicating the Enforceability of a Senior Mortgage in an Action to Foreclose Upon a Junior Lien

Plaintiff argues that there are several reasons why the court should not include the amounts secured by the "Greenspan mortgage" in its calculation of defendants' equity in the property. In particular, plaintiff argues that: (1) the note became unenforceable years ago after no payment was made on the note within the time provided by the applicable statute of limitations,[2] (2) the mortgage became unenforceable at some point in time under a different statute of limitations, and (3) the mortgage was not an arms-length transaction because it was given to a family member. Defendants have responded substantively to each of these arguments, but have also argued that the court should not entertain these arguments in a case in which Ms. Greenspan has not been joined as a party.

The court frames the issue as whether, in an action for foreclosure of a junior lien, the court may adjudicate either the enforceability of a senior mortgage or the amount secured by a senior mortgage when the senior mortgagee has not been joined as a party to the action. For the following reasons, the court concludes that it either cannot or should not adjudicate those questions in this case, because Ms. Greenspan has not been joined as a party.

The general rule is that a foreclosure of a junior lien does not require the plaintiff to join the senior lienholders or mortgagees as parties. The reason is that "[f]oreclosure does not terminate interests in the foreclosed real estate that are senior to the mortgage being foreclosed." Restatement (Third) of Property, Mortgages § 7.1. In other words, the senior mortgagees do not normally need to be parties in an action involving foreclosure of a junior lien, because such a foreclosure does not normally affect the interests held by the senior mortgagees.

In this case, however, plaintiff has asked the court to make adjudications about the rights of a senior mortgagee: Ms. Greenspan. She was not joined as a party, and has no discernable notice of the proceeding, and is not present to defend her interests. This presents obvious due-process concerns. 7 Wright & Miller, Federal Practice and Procedure: Civil 3d § 1602.

Plaintiff has argued that the due-process concerns are ameliorated by the procedural posture of the case, and by the nature of the adjudication being made. Specifically, plaintiff argues that the court is not actually adjudicating whether the Greenspan mortgage is enforceable, but rather whether the amount of defendants' equity in their homestead exceeds the amount of the statutory exemption. Plaintiff therefore argues that the court's determinations in this case would not actually preclude Ms. Greenspan from asserting her rights in a subsequent proceeding.

It may be that the case does not implicate the doctrines of issue preclusion. Nevertheless, it appears to the court that the adjudications requested by plaintiff would impair Ms. Greenspan's rights "as a practical matter." Vt. R. Civ. P. 19(a); *Grassy Brook Village, Inc. v. Richard D. Blazej, Inc.*, 140 Vt. 477, 481 (1981); 7 Federal Practice and Procedure, *supra*, at § 1602. If the court were to rule that the "Greenspan mortgage" was not enforceable, or that it secured nothing, and therefore grant a foreclosure judgment to plaintiff, it is likely that plaintiff (or another foreclosure purchaser) would

---

[2] The parties agree that note includes a choice-of-law provision, that Indiana law controls the enforcement of the note, and that Indiana law regarding the time within which negotiable instruments may be enforced is either similar or identical to provisions of the Uniform Commercial Code. Given the holding of *Huntington v. McCarty*, 174 Vt. 69, 70–71 (2002), which is discussed in more detail below, the court does not believe that it is necessary to delve deeply into questions related to the enforceability of the "Greenspan note." In any event, the parties have not argued that there are material choice-of-law problems presented by the fact that the note specified that it was to be governed by Indiana law.

thereafter brandish the court's decision in subsequent litigation with Ms. Greenspan. Even if the decision did not have preclusive effect, it would have persuasive value, either as precedent, or as negotiation leverage. A ruling issued under these circumstances would therefore not be fair to Ms. Greenspan.

A second concern is the risk of inconsistent adjudications. Vt. R. Civ. P. 19(a); 7 Federal Practice and Procedure, *supra*, at § 1602. If the court were to make adjudications in this action to the effect that the Greenspan mortgage is not enforceable (or that it secures nothing), there is a risk that a court in a subsequent action (e.g., an action between the foreclosure purchaser and Ms. Greenspan) might conclude that Ms. Greenspan's mortgage is enforceable. It is conceivable, for example, that Ms. Greenspan might adduce relevant and persuasive evidence in a second action that is not available to this court in her absence.

Plaintiff argues that he is willing to bear the risk of inconsistent adjudications, and that he is willing to buy the property at the foreclosure sale even if he later has to pay off the Greenspan mortgage. But the intolerable risk of inconsistent adjudications is not that a foreclosure purchaser might pay the wrong price at a foreclosure sale. The risk is instead that if (1) this court rules that the Greenspan mortgage is not enforceable, and therefore allows plaintiff to foreclose upon defendants' homestead, but (2) a later court (maybe with better evidence) rules that the Greenspan mortgage is enforceable after all, the implication is that the foreclosure judgment should never have been granted in the first place. In other words, the risk presented by plaintiff's approach to this case is not an erroneous calculation of a purchase price but rather the erroneous loss of a homestead. An approach that failed to account for this risk would not be fair to defendants.

An approach that harmonizes the general rule with the circumstances of this case is that (1) a foreclosing junior lienholder does not normally need to join the senior mortgagees as a party to the foreclosure action, but that (2) a foreclosing junior lienholder should join a senior mortgagee as a party if there is a reason why the foreclosure adjudication requires the involvement of the senior mortgagee. Indeed, the American Law Institute has endorsed exactly this approach: a foreclosing junior lienholder does not normally need to join a senior mortgagee as a party, Restatement (Third) of Property, Mortgages § 7.1, but the foreclosing junior lienholder "may make the holders of senior liens parties to a judicial foreclosure action" for the purpose of "determining the amount of those liens." Restatement (Third) of Property, Mortgages § 7.1, cmt. a. Put another way, a senior mortgagee either may or should be joined as a party to a junior foreclosure action whenever there is any issue involving the amount secured by the senior mortgage (or, by extension, when there is any issue involving the enforceability of the senior mortgage). This approach is consistent is with the concerns identified above regarding due process and the risks of inconsistent adjudications.

This approach is also consistent with the policies underlying the "homestead exemption." Although existing Vermont statutes and cases do not clearly allocate the burden of proof with respect to the application of the exemption, the statute is fundamentally protective in nature, e.g., *Brattleboro Savings and Loan Ass'n v. Hardie*, 2014 VT 26, ¶ 9, 196 Vt. 144; *Mercier*, 149 Vt. at 524–25, and it appears to be uncontroversial that "[t]he creditor has the burden of showing that the value of the property exceeds the amount of the homestead exemption." 40 Am. Jur. 2d *Homestead* § 181. Given this, it makes sense to place upon a foreclosing plaintiff the burden of bringing a senior mortgagee into the action if the foreclosing plaintiff wishes to adjudicate some issue related to the senior mortgage for

the purposes of proving that a debtor has sufficient equity in their homestead to support a judgment of foreclosure.

At trial, plaintiff's attorney alluded to a lack of information regarding the whereabouts of Ms. Greenspan. The implication was that plaintiff lacked the ability to join her as a party to the action. Plaintiff failed to preserve this argument by presenting it to the court in such a way that effective relief could be granted. Generally, a junior lienholder may inquire directly of a senior lienholder as to certain details of the senior lien, including the amount owing, the interest rate, and whether the senior lienholder considers the obligation to be in default. A senior lienholder has a "duty to disclose" these facts in writing "within a reasonable time" of the request, and senior lienholders are responsible for the consequences of providing inaccurate information in response to these requests. Restatement (Third) of Property (Mortgages) § 1.6(a)–(b). A plaintiff in a foreclosure action likewise has the ability to discover information from the defendant pursuant to the Vermont Rules of Civil Procedure. To the extent that plaintiff needed more information in order to bring Ms. Greenspan into the action, plaintiff failed to pursue available procedures that would have either produced the necessary information or clarified whether the necessary information was available.[3] Given plaintiff's failure to pursue motion practice on this issue, the court declines to structure the merits determination in such a way as to permit plaintiff to seek adjudication in Ms. Greenspan's absence of issues related to her mortgage.

Likewise, plaintiff's attorney also alluded at trial to the possibility that Ms. Greenspan is deceased. It was only an offhand allusion—there is no evidence to that effect—but it raised the question about what would happen in that event. The answer is that there are remedies set forth in the Vermont statutes to obtain the discharge of mortgages held by persons who are deceased, or by persons who are believed to be deceased, or by corporations that have been dissolved. 27 V.S.A. §§ 465–469. The statutes contain due-process provisions related to notice. The procedures were not referenced or pursued in this case. As such, the court declines to conclude that the offhand allusions to the possibility of Ms. Greenspan's death should justify the adjudication in her absence of issues related to her mortgage.

Additionally, the court's approach does not prevent plaintiff from proving his claim. It would have been entirely possible for plaintiff to obtain a foreclosure judgment in this case by proving that the amount of defendants' equity in the property exceeded the homestead amount, even if the amounts secured by the "Greenspan mortgage" were assumed to be valid. If plaintiff had proven that the fair-market value of the home was sufficiently high, for example, plaintiff might have proven an entitlement to foreclosure regardless of whether the "Greenspan mortgage" was included or not. (If the court had found Ms. Baldwin's opinion of the homestead's fair-market value to be more persuasive than Ms. Vaughan's opinion, for example, there would be sufficient equity in the property to support a judgment of foreclosure even including both the principal amount secured by the Greenspan mortgage and interest at 10% per annum since the time the Greenspan note was made in 2007.) In other words,

---

[3] Plaintiff did file a motion seeking exclusion of evidence related to the "Greenspan mortgage," but granting this motion would have had the effect of shifting the burden of production to defendants. The "Greenspan mortgage" was recorded in the land records and its existence was not a surprise. The time for seeking to compel further information about Ms. Greenspan was earlier in the case, rather than via a motion for exclusion of evidence filed shortly before the commencement of trial.

the issue in this case is not whether a remedy is available, but rather whether plaintiff has proven on the merits that he is entitled to the remedy he seeks.[4]

Finally, the court does not perceive the situation to be one where procedural rigor is masking substantive chicanery or unfairness. Existing Vermont law clearly establishes that a mortgage remains enforceable even if the statute of limitations would prevent an action seeking collection of amounts due under the note itself. *Huntington v. McCarty*, 174 Vt. 69, 70–71 (2002). And while plaintiff has insinuated that the transaction between defendants and their relative was not at arms' length, plaintiff has not actually proven any elements of a fraudulent conveyance, e.g., 9 V.S.A. § 2288. Defendants borrowed money from Ms. Greenspan and gave her a mortgage on their homestead long before the occurrence of the events that gave rise to plaintiff's judgment. The mortgage was recorded in the land records and plaintiff was on notice of the mortgage before he filed his judgment lien and brought this foreclosure action. At most, there is a substantive disagreement about whether the statute of limitations on Ms. Greenspan's mortgage has lapsed, but the quality of the court's determination of that issue would be substantially improved if the court heard from Ms. Greenspan about whether a default had occurred. In other words, the values of due process, the purposes of the "homestead exemption," and the "equities of the situation" would all be best served by undertaking an adjudication of that issue only after providing Ms. Greenspan with notice of the action and an opportunity to be heard. *Merchants Bank v. Lambert*, 151 Vt. 204, 206 (1989).

For these reasons, the court concludes that, in the absence of Ms. Greenspan, the court either cannot or should not adjudicate either the enforceability of her mortgage or the amounts secured by her mortgage. To the extent that the decision is discretionary, the court declines to undertake the adjudications for the reasons set forth in this opinion. Assuming the validity of the Greenspan mortgage, the court concludes that the principal amount secured by that mortgage (roughly $83,000), together with the amounts secured by the two senior-most mortgages (roughly $898,000), leaves defendants with an equity in the property of roughly $72,000, which is far less than the homestead exemption amount of $125,000. For that reason, plaintiff has failed to establish entitlement to a judgment of foreclosure. *Mercier*, 149 Vt. at 525. A separate written judgment order shall issue.

Electronically signed on Tuesday, December 17, 2024 pursuant to V.R.E.F. 9(d).

H. Dickson Corbett
Superior Court Judge

Vermont Superior Court
Filed 12/18/24
Windsor Unit

---

[4] Put another way, the court is not dismissing the complaint for failure to join an indispensable party under Vermont Civil Procedure Rule 19. The court is instead approaching the case as one where the shaping of the action can lessen or avoid the possibility of prejudice arising from the absence of the party. Vt. R. Civ. P. 19(b).